UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEROME C. SILLS, <br><br> Plaintiff, <br><br> v. <br><br> REX LUMBER COMPANY, <br><br> Defendant. | Case No. 20-CV-12235-AK |

**MEMORANDUM AND ORDER ON**
**MOTIONS CONCERNING PURPORTED SETTLEMENT AGREEMENT**

**A. KELLEY, D.J.**

This is an employment discrimination action in which plaintiff Jerome Sills, who is representing himself, seeks to recover against his former employer, Rex Lumber Co. ("Rex" or "Defendant"), for violations of the Americans with Disabilities Act ("ADA") and Massachusetts statutory and common law. Defendant has moved to enforce a term sheet that it alleges constitutes a settlement of Mr. Sills's claims. [Dkt. 54]. Mr. Sills has crossed-moved for judgment in the sum of $35,000. [Dkt. 57]. For the reasons that follow, Defendant's motion will be **GRANTED** and Mr. Sills's motion will be **DENIED**.

**I.   FACTUAL & PROCEDURAL BACKGROUND**

Mr. Sills initiated this lawsuit in November 2020 by filing a complaint in Massachusetts Superior Court, which defendant timely removed to federal district court. [Dkt. 1]. In February 2021 [Dkt. 18], and again in August 2021 [Dkt. 26], Mr. Sills amended his complaint, which now comprises five counts: (1) wrongful termination in violation of the ADA; (2) non-payment

1

of sick leave wages in violation of Massachusetts wage and hour law; (3) a hostile work environment in violation of the ADA; (4) a breach of the implied warranty of good faith and fair dealing; and (5) wrongful termination in violation of Massachusetts anti-discrimination law, [Dkt. 26].  In his amended complaint, Mr. Sills generally alleges that he sustained injuries to his hand, back, and respiratory system while working for Defendant as a laborer.  [Id.]  He further alleges that when he took sick time, Defendant refused to pay him accrued sick leave wages, and later wrongfully terminated him.  [Id.]  Plaintiff alleges, and Defendant has not contested, that he exhausted his administrative remedies before seeking relief in federal court.  [Id.]

In March 2022, the Court ordered Mr. Sills to appear for his deposition.  [Dkt. 53].  On April 11, 2022, the parties engaged in settlement negotiations during a break in Mr. Sills's deposition and agreed to suspend completion of the deposition as they attempted to settle Mr. Sills's claims.  That same day, Mr. Sills signed a term sheet in which he agreed to accept a payment of $10,000 and agreed to release his claims against Defendant and dismiss the lawsuit. [Dkt. 58-1 at 4–5].  Sometime after signing the term sheet, Mr. Sills indicated that he wished to withdraw from the negotiated agreement and sought a higher monetary figure.  Defendant now seeks to enforce the terms of this term sheet and dismiss this action.

## II.   DISCUSSION

Public policy "strongly favors encouraging voluntary settlement of employment discrimination claims." EEOC v. Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996) (citing Carson v. American Brands, Inc., 450 U.S. 79, 88 n.14 (1981) ("In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims.")).  Moreover, "[a] party to a settlement agreement may seek to enforce the term's agreements when the other party reneges." Malave v. Carney Hosp., 170 F.3d 217,

220 (1st Cir. 1999). When a settlement collapses before a lawsuit dismisses, as is the case here, a party seeking to proceed according to the settlement may file a motion for enforcement. Id. In such circumstances, public policy favors enforcement of the agreement, "so as to hold people to the contracts they make and to avoid costly and time-consuming litigation." Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, 962 F. Supp. 2d 311, 315 (D. Mass. 2013).

"[W]hen a district court purposes summarily to enforce a settlement, it first must ascertain whether or not a binding agreement in fact existed." Malave, 170 F.3d at 222. In order to form a binding settlement agreement, "there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." D'Agostino v. Federal Ins. Co., 969 F. Supp. 2d 116, 127 (D. Mass. 2013) (quoting Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000)). Although it is "not required that all terms of the agreement be precisely specified," the parties must have "reached an agreement on all of the *essential* terms." Id. (emphasis added). Where the parties have mutually assented to "all material terms," their agreement is enforceable "even if those terms are not memorialized in a final writing." Hansen, 962 F. Supp. 2d at 315. However, if "material facts are in dispute as to the validity or terms of the agreement," a district court may not enforce a settlement. Bander v. City of Quincy, 344 F.3d 47, 52 (1st Cir. 2003).

Here, the Court's task is to determine whether the term sheet Mr. Sills signed on April 11, 2022 constitutes a binding settlement which contains all of the essential terms of the parties' agreement and reflected the parties' intention to be bound by that agreement at the time of its signing. This analysis begins with a review of the terms themselves. These terms include, among others:

- "Rex Lumber will pay $10,000 USD (gross) to Jerome Sills, which is intended to cover all potential claims for damages . . . and all other remedies."
- "Sills will execute a general release of claims to all parties and related individuals and entities, including (without limitation) Rex Lumber."
- "Sills agrees not to disparage the released parties to the extent permitted by law."
- "Sills will not seek or accept any working relationship of any kind with Rex Lumber"
- "Sills will dismiss pending lawsuit and any related claims, with prejudice on receipt of payment.  Sills will execute a stipulation of dismissal as to the federal court action, which will be held in escrow and filed after Sills receives payment."
- "Payment to be made within twenty-one (21) business days after execution of written settlement agreement and Sills provides all documents required by Rex Lumber to process payment."
- "Additional terms consistent with the terms herein to be set forth in written settlement agreement and negotiated by the parties."

[Dkt. 58-1 at 4–5].

    In sum, the term sheet indicates that Defendant agrees to pay Mr. Sills a fixed cash sum that is defined as compensation for each of his claims for damages and other remedies.  In exchange, Mr. Sills agrees to release his claims, dismiss this lawsuit, not to seek or accept any working relationship with Defendant, and to refrain from disparaging Defendant.  The term sheet further indicates the timing and method of payment.  Defendant argues that the sheet thus contains each *essential* term of an agreement to settle Mr. Sills's claims, notwithstanding the

provision indicating that "additional terms consistent with the terms herein" would be "set forth in written settlement agreement and negotiated by the parties," [id.].

Defendant's position is meritorious. Although the term sheet expressly contemplates both the possibility of additional terms and a subsequent writing, the Court's task is only to determine whether the term sheet represents an agreement between the parties on all *essential* and *material* terms of settlement. See D'Agostino, 969 F. Supp. 2d at 127; Hansen, 962 F. Supp. 2d at 315. Here, Mr. Sills does not allege—and the Court cannot find—that any material terms of settlement are missing from this term sheet. Conversely, the term sheet delineates with precise specificity what each party agreed to give up during the course of settlement negotiations: a fixed sum of money in exchange for Mr. Sills's release of his claims and agreement, in effect, to walk away from his relationship with Defendant. See Hansen, 962 F. Supp. 2d at 315 (holding that agreement on cash sum, releases of all parties, and dismissal of the action constituted "all material terms"). This exchange of consideration bears strong resemblance to countless settlements of employment discrimination claims reached by litigants each year, in fulfillment of Congress's "strong preference" that Title VII plaintiffs voluntarily settle their claims. See Astra U.S.A., 94 F.3d at 744. Nothing in either the term sheet or the broader record of litigation suggests that Defendant or its counsel sought to facilitate an unjust settlement of the plaintiff's claim through false pretenses, an important policy consideration in employment discrimination actions involving self-represented plaintiffs. See Frederic v. M.C.A.D., 170 N.E.3d 719 at *3 (Table) (Mass. App. Ct. 2021) (evaluating a self-represented plaintiff's argument that he was tricked into settlement of an employment discrimination claim).

Further, an email Mr. Sills sent Defendant's counsel following his review and signing of the term sheet supports Defendant's position that the parties intended to be bound by the term

sheet. See D'Agostino, 969 F. Supp. 2d at 127. In an email to Defendant's counsel attaching the signed term sheet, Mr. Sills wrote: "I have read the term sheet, in its simplest form, understandable. I have signed the sheet so [*sic*] we can end this case." [Dkt. 56-2]. This email indicates that, at the time he returned the signed term sheet, Mr. Sills intended to be bound by the terms and end the case. Once Mr. Sills assented to these terms and expressed his desire to be bound by them, the term sheet became enforceable, even in the absence of the "final writing" that the term sheet contemplated. See Hansen, 962 F. Supp. 2d at 315 (holding that parties formed contract via email exchange without a "final writing" where plaintiff indicated he "will accept Defendants' settlement offer" and defendants responded with "Glad we were able to get it done").

Mr. Sills's arguments against enforcement of the term sheet are unpersuasive. Mr. Sills asks the court to increase the term sheet's $10,000 cash offer to $35,000, and to enter judgment for him in that amount. [Dkt. 57]. He presents a settlement contract which reflects the $35,000 figure, [Dkt. 59 at 19–29], but does not provide any evidence that Defendant assented to this contract, or the $35,000 figure more generally, either before or after the parties executed the term sheet with the $10,000 figure. Further, although Mr. Sills argues that the $10,000 figure was merely an offer from Defendant and not an agreed-upon sum, his signature on the term sheet and emailed statement that he so signed in order to "end this case" constitute an acceptance of that offer. The Court understands that Mr. Sills now seeks to withdraw from this agreement and pursue settlement on more favorable terms, but Mr. Sills may not come to court seeking to undo the contract he made with Defendant. This contract will permit Mr. Sills to walk away from this action with guaranteed compensation for his alleged injuries while avoiding the risk of further "costly and time-consuming litigation." See Hansen, 962 F. Supp. 2d at 315.

6

## III.     CONCLUSION

Because the parties have reached a valid settlement agreement, Defendant's motion, Dkt. 54, is **GRANTED** and Mr. Sills's motion, Dkt. 57, is **DENIED**.  In accordance with the terms of the settlement agreement, Mr. Sills shall execute a stipulation of dismissal, which Defendant shall hold in escrow until Mr. Sills receives payment in the amount of $10,000.

**SO ORDERED.**

June 28, 2022                                                                                         /s/ Angel Kelley
                                                                                                ANGEL KELLEY
                                                                                                U.S. DISTRICT JUDGE